UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YENIFER ANDREA            :  1:25-CV-02408
ESQUIVEL LEON,            :
                          :  (Judge Neary)
            Petitioner    :
                          :  (Magistrate Judge Schwab)
      v.                  :
                          :
                          :
ANGELA HOOVER, *et al.*,  :
                          :
            Respondents   :

**REPORT AND RECOMMENDATION**

## I.  Introduction.

Petitioner Yenifer Andrea Esquivel Leon, an alien in immigration custody, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging her continued detention without a bond hearing.  The question is whether Leon is detained under 8 U.S.C. § 1225(b)(2) or whether she is detained under 8 U.S.C. § 1226(a).  If she is detained under § 1225(b)(2), she is not entitled to a bond hearing.  But if she is detained under § 1226(a), she is entitled to a bond hearing.  Leon requests, among other things, that the court declare that her detention violates the Immigration and Nationality Act, the Administrative Procedure Act, and/or the Due Process Clause of the Fifth Amendment.  And she seeks immediate release from custody unless she receives a bond hearing before an

Immigration Judge within ten days, or, in the alternative, immediate release from custody. For the following reasons, we conclude the Leon is detained under 8 U.S.C. § 1226(a). Accordingly, we recommend that the court grant Leon's petition for a writ of habeas corpus to the extent the court orders the respondents to provide Leon with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

## II. Background and Procedural History.

Leon, who is a citizen of Guatemala, asserts that she entered the United States on April 24, 2022, when she was 15 years old. *See doc. 1* ¶¶ 1, 2. According to Leon, she presented herself to immigration authorities at the border. *Id.* ¶ 3. According to Leon's immigration record, however, she "was encountered by US Border Patrol in the Rio Grande Valley, Texas Border Patrol Sector." *Doc. 6-2* at 4.[1]

---

[1] Leon attached to her petition for a writ of habeas corpus an April 24, 2022, Notice to Appear charging her with being subject to removal from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") because she is "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Doc. 1-2* at 1. This Notice to Appear ordered Leon to appear before an Immigration Judge in Texas on a date and time to

Leon was detained for about two weeks in a children's detention center in Texas. *Doc. 1* ¶ 3.  On May 10, 2022, she was released to the custody of her father. *Id.*; *Doc. 1-3* at 1.

On May 17, 2024, Leon filed a petition for special immigrant juvenile status with the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"). *Doc. 1* ¶ 4; *doc. 1-4*.[2]  USCIS approved that petition on August 30, 2024, granting deferred action. *Doc. 1* ¶ 4; *doc. 1-4*.  In its notice approving that petition, USCIS stated, in pertinent part:

---

be determined. *Id*.  According to the respondents, this Notice to Appear was not served on Leon as she was only 15 years old at the time. *See doc. 6* at 14–15; *See also doc. 6-2* ("Record of Deportable/Inadmissible Alien" stating that the Notice to Appear was not served on Leon).

[2] "Special Immigrant Juvenile (SIJ) status [is] a protective classification designed by Congress to safeguard abused, abandoned, or neglected alien children who are able to meet its rigorous eligibility requirements." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 158 (3d Cir. 2018).  "The protections afforded to children with SIJ status include an array of statutory and regulatory rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents (LPR), exemption from various grounds of inadmissibility, and robust procedural protections to ensure their status is not revoked without good cause." *Id*.

> Grant of Deferred Action:
>
> Your Form I-360 petition has been approved, but you do not yet have a visa available to file an application for adjustment of status.  USCIS has determined that you warrant a favorable exercise of discretion to received deferred action.  As a result, you have been placed in deferred action and you may be issued an employment authorization document.  Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specified period of time.
>
> Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS.

*Doc. 1-4* at 1.

On November 12, 2025, the Philadelphia Police department arrested Leon on charges of retail theft and conspiracy. *Doc. 1* ¶ 5; *Doc. 1-7* at 1.  Those charges were withdrawn on December 11, 2025. *Doc. 1* ¶ 5, *Doc. 1-7* at 1.  In the meantime, however, on December 1, 2025, Immigration and Customs Enforcement ("ICE") arrested Leon. *Doc. 1* ¶ 6; *Doc. 1-6* at 2; *Doc. 6-2* at 4.  According to Leon's immigration record, ICE officers encounter Leon on December 1, 2025, as she was departing from a criminal court hearing, and after positively identifying Leon and identifying themselves to her, they advised her that they had an

4

administrative warrant for her arrest. *Doc. 6-2* at 4.  She was arrested without incident and taken to the Philadelphia field office for further processing. *Id.*

Also, on December 1, 2025, the Department of Homeland Security issued another Notice to Appear. *Doc. 1-9.*  This Notice to Appear charged Leon with being subject to removal from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) of the INA because she is "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" and pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) because she is "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under [8 U.S.C. § 1181(a)] of the Act." *Id.* at 1, 4.  This Notice to Appear ordered Leon to appear before an Immigration Judge in New Jersey via video on December 12, 2025, to show cause why she should not be removed from the United States. *Id.* at 1.  This Notice to Appear was served on Leon. *Id.* at 3 ("Certificate of Service").

By a Notice of Internet-Based Hearing dated December 8, 2025, Leon was given notice of a hearing on December 23, 2025. *Doc. 1-10.*  And by a Notice of Internet-Based Hearing dated December 23, 2025, Leon was given notice of a master hearing on January 13, 2026. *Doc. 6-5 at 2.*

On December 15, 2025, while detained at the Clinton County Correctional Facility, Leon began this action by filing a petition for a writ of habeas corpus. *Doc. 1.*  The respondents filed a response to the petition and related documents. *Doc. 6.*  And the petitioner filed a reply.

On January 16, 2026, the respondents filed a notice of supplemental authority citing the United States Court of Appeals for the Third Circuit's January 15, 2026 decision in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026). *Doc. 8.*  We then ordered the parties to file supplemental briefs regarding the impact of *Khalil*. *Doc. 10.*  And the parties have filed such supplemental briefs. *Docs. 14, 15.*

## III.  The only proper respondent in this case is Warden Hoover.

The petition names as respondents: (1) Angela Hoover, the Warden of the Clinton County Correctional Facility; (2) David O'Neill, the Acting Philadelphia

Field Office Director of Enforcement and Removal Operations of ICE; (3) Todd Lyons, the Acting Director of ICE; (4) Kristi Noem, the Secretary of the Department of Homeland Security; (5) Pamela Bondi, the United States Attorney General. *Doc. 1* at 1 (caption), ¶¶ 13–17.

 28 U.S.C. § 2242 provides that a petition for a writ of habeas corpus shall name "the person who has custody over" the petitioner.  And pursuant to 28 U.S.C. § 2243, the writ of habeas corpus, or order to show cause, shall be directed to the petitioner's custodian.  "[T]here is generally only one proper respondent to a given prisoner's habeas petition." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  And that respondent is the petitioner's immediate custodian, *i.e.*, the "'person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary.'" *Id.* at 435 (quoting *Wales v. Whitney,* 114 U.S. 564, 574 (1885) (emphasis added)).  The warden of the prison where the petitioner is held is considered the petitioner's immediate custodian for purposes of a habeas action. *Id.* at 435–42.  Thus, "[w]henever a§ 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 445.

7

Here, Leon was incarcerated at the Clinton County Correctional Facility at the time she filed this petition.  Thus, Warden Hoover is her immediate custodian and the proper respondent.  O'Neill, Lyons, Noem, and Bondi are not Leon's immediate custodians for purposes of a petition for a writ of habeas corpus.  Thus, we recommend that they be dismissed as respondents.

## IV.  This Court has jurisdiction over Leon's petition.

This court has jurisdiction over Leon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 1331, and the court may grant a writ of habeas corpus to, among others, an individual who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(a), (c)(3).  Unlike in some other similar cases, in their response to the petition, the respondents did not assert that the court lacks jurisdiction.  Nevertheless, the respondents later filed a notice of supplemental authority pointing to the Third Circuit's recent decision in *Khalil*, 164 F.4th 259, and suggesting that that case supports a conclusion that 8 U.S.C. § 1252(b)(9) strips the court of jurisdiction in this case. *Doc. 8*.  After we ordered supplemental briefing regarding the impact of *Khalil,* the respondents filed a supplemental brief and notice of withdrawal of argument. *Doc. 14*.  In this document, the respondents concede that the court has jurisdiction over Leon's

petition. *Id.*  Nevertheless, the court is required to consider *sua sponte* whether it has subject-matter jurisdiction. *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 548 (2019).

The court has subject-matter jurisdiction.  Many courts have addressed whether the INA strips the court of jurisdiction in cases where the petitioner is challenging whether he or she is properly detained under 8 U.S.C. § 1225(b)(2)(A), and they have concluded that it does not. *See e.g.*, *Viantsko v. Lowe,* No. 4:25-CV-02523, 2026 WL 313473, at *3 (M.D. Pa. Feb. 5, 2026) (8 U.S.C. §§ 1252(a)(2), 1252(b)(9), and 1252(g)); *Gonzalez Centeno v. Lowe*, 3:25-CV-2518, 2026 WL 94642, at *2 (M.D. Pa. Jan. 13, 2026) (8 U.S.C. §§ 1252(a)(2)(B)(ii), 1252(b)(9), and 1252(g)); *Vadel v. Lowe*, No. 3:25-CV-02452, 2025 WL 3772059, at *2–3 (M.D. Pa. Dec. 31, 2025) (8 U.S.C. §§ 1252(a)(2)(B)(ii), 1252(b)(9), and 1252(g)); *Quispe v. Rose*, No. 3:25-CV-02276, 2025 WL 3537279, at *3–4 (M.D. Pa. Dec. 10, 2025) (8 U.S.C. §§ 1252(a)(2)(B)(ii), 1252(b)(9), and 1252(g)); *Samassa v. Lowe*, No. 1:25-CV-02197, 2025 WL 3653751, at *1–2 (M.D. Pa. Dec. 17, 2025) (8 U.S.C. §§ 1252(a)(2)(B)(ii), 1252(b)(9), and 1252(g)); *Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *3 (M.D. Pa. Dec. 8, 2025) (8 U.S.C. §§ 1252(a)(2)(B)(ii), 1252(b)(9), and 1252(g)); *Santana-Rivas v. Warden of*

*Clinton Cnty. Corr. Facility*, No. 3:25-CV-01896, 2025 WL 3513152, at *2 (M.D. Pa. Dec. 8, 2025) (8 U.S.C. §§ 1252(b)(9), and 1252(g)).  We agree with the reasoning in those cases.

We also agree with the reasoning in cases where courts have considered the effect of *Khalil* and have concluded that *Khalil* is distinguishable, as the respondents now concede, because unlike in *Khalil*, Leon's challenge to her detention without a bond hearing is wholly collateral to the removal process and does not raise questions that can be reviewed in connection with a petition for review of a final order of removal. *See, e.g.*, *Viantsko*, 2026 WL 313473, at *3 (discussing *Khalil* and concluding that because Viantsko is challenging only his continued detention without a bond hearing, he is bringing a detention-specific claim like the ones the court in *Khalil* stated may be brought in a § 2241 habeas petition); *Giyosov v. Jamison*, No. CV 26-0298, 2026 WL 209839, at *1 (E.D. Pa. Jan. 27, 2026) (concluding "that *Khalil* is distinguishable because Giyosov's petition does not present legal or factual questions that can be meaningfully reviewed alongside review of a final order of removal"); *Kourouma v. Jamison*, No. CV 26-0182-KSM, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not 'inextricably

10

linked' to his removal proceedings" given that the "Petitioner does not argue that his confinement is unlawful because the Government's removal action is itself invalid" and the petitioner is challenging the Government's authority to detain him without a bond hearing rather than "the Government's broader authority to detain him pending a final decision on removal").

Having concluded that the court has jurisdiction over Leon's petition, we turn to the parties' other arguments.

## V. Leon is not properly detained under 8 U.S.C. § 1225(b)(2)(A). Rather, she is subject to detention under 8 U.S.C. § 1226(a).

"Federal immigration law contains various provisions authorizing the Government to detain aliens during the removal process." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). This case, like hundreds of others filed in the past several months across the country,[3] requires us to determine whether an applicant for admission who has already entered the country is properly detained

---

[3] *See Patel*, 2025 WL 3516865, at *4 n.7 (citing more than 50 cases decided by district judges in the Third Circuit); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-CV-01896, 2025 WL 3522932, at *8–9 (M.D. Pa. Nov. 13, 2025) (report and recommendation citing cases decided by district judges across the country as well as district judges in the Third Circuit), *report and recommendation adopted in part and rejected in part*, 2025 WL 3513152, at *1 (M.D. Pa. Dec. 8, 2025).

11

under 8 U.S.C. § 1225(b)(2)(A), or whether that alien is subject to detention under

8 U.S.C. § 1226(a).  Here, the respondents contend that Leon is properly detained

under § 1225(b)(2)(A), which provides for mandatory detention, and thus, she is

not entitled to a bond hearing.  On the other hand, Leon contends that she is subject

to detention under § 1226(a), which is discretionary, and under which she may be

released on bond.

**A. 8 U.S.C. § 1225; 8 U.S.C. 1226; and DHS's recent change in detention policy.**

8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited

removal of inadmissible arriving aliens; referral for hearing."  Subsection (a) of

§ 1225, titled "Inspection," specifies which aliens are treated as applicants for

admission:

> An alien present in the United States who has not been admitted
> or who arrives in the United States (whether or not at a
> designated port of arrival and including an alien who is brought
> to the United States after having been interdicted in
> international or United States waters) shall be deemed for
> purposes of this chapter an applicant for admission.

8 U.S.C.A. § 1225(a)(1).  And § 1225(a)(3) provides that "[a]ll aliens (including

alien crewmen) who are applicants for admission or otherwise seeking admission

or readmission to or transit through the United States shall be inspected by

12

immigration officers." 8 U.S.C. § 1225(a)(3).  Subsection (b) of § 1225, titled

"Inspection of applicants for admission," provides for two types of removal

proceedings for applicants for admission: expedited removal proceedings under

§ 1225(b)(1) and regular removal proceedings under § 1225(b)(2). 8 U.S.C.

§ 1225(b).  Sections 1225(b)(1) and 1225(b)(2) both provide for detention of the

applicants for admission to which those subsections apply. *Id*.

8 U.S.C. § 1226, which is titled "Apprehension and detention of aliens,"

"distinguishes between two different categories of aliens"—those detained under

§ 1226(a) and those detained under § 1226(c). *Jennings v. Rodriguez*, 583 U.S.

281, 288 (2018).[4]  Subsection (a), titled "Arrest, detention, and release," provides

that "[o]n a warrant issued by the Attorney General, an alien may be arrested and

detained pending a decision on whether the alien is to be removed from the United

---

[4] "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under§ 1226(a)." *Jennings*, 583 U.S. at 289.  "Under § 1226(c), the 'Attorney General shall take into custody any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id*. (quoting § 1226(c)(1)).  "The Attorney General may release aliens in those categories 'only if the Attorney General decides . . . that release of the alien from custody is necessary' for witness-protection purposes and 'the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.'" *Id*. (quoting § 1226(c)(2)).  The respondents do not contend that § 1226(c) applies to Leon.

States." 8 U.S.C. 1226(a).  It continues, in relevant part, that "[e]xcept as provided in subsection (c) and pending such decision, the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on—(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General, or (B) conditional parole." *Id*.

The reason why the issue of whether applicants for admission who have already entered the country are subject to detention under § 1225(b)(2)(A) or § 1226(a) is being raised in so many cases nationwide now is that the Department of Homeland Security recently changed its position on the issue. *See Maldonado Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (discussing the July 8, 2025 policy change by the Department of Homeland Security).  And on September 5, 2025, in *Matter of Yajure Hurtado*, the Board of Immigration Appeals held that immigration judges "have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years." 29 I. & N. Dec. at 228.  In *Matter of Yajure Hurtado*, the Board of Immigration Appeals "acknowledged that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without

14

inspection," but it noted that the issue had not been presented to it before. *Id*. at 225 n.6. And it further noted that "the supplemental information for the 1997 Interim Rule titled 'Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures,' 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997), reflects that the Immigration and Naturalization Service took the position at that time that '[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.'" *Id*. Nevertheless, although acknowledging this history, the Board of Immigration Appeals rejected Hurtado's argument that the Department of Homeland Security's prior practice of treating aliens who are arrested after having lived in the United States for more than 2 years as detained under § 1226 reflected that Congress did not intend § 1225(b)(2)(A) to apply to those aliens. 29 I. & N. Dec. at 225–26.

### B. Leon does not fall within the scope of 8 U.S.C. § 1225(b)(2)(A) because she is not an alien seeking admission.

The dispute here centers on the language of § 1225(b)(2)(A), which provides:

15

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C.A. § 1225(b)(2)(A).[5]  The respondents contend that § 1225(b)(2)(A) applies to all applicants for admission except those who fall within one of its exceptions.  But the majority of courts to have considered the issue have rejected that contention, and they have construed the phrase "alien seeking admission," as not synonymous with applicant for admission.

The majority of courts construe the phrase "alien seeking admission," which is not defined in the INA, as describing "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Vadel*, 2025 WL 3772059 at *4 (citing cases).  Although the INA does not define the phrase "alien seeking admission," it does define the terms "admission" and

---

[5] Subparagraph (B) of § 1225(b)(2) provides that subparagraph (A) does not apply to aliens who are crewmen, aliens to whom § 1225(b)(1) applies, or aliens who are stowaways. 8 U.S.C. § 1225(b)(2)(B).  And Subparagraph (C) of § 1225(b)(2) provides that "[i]n the case of alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C).

"admitted" to "mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).  And the majority of courts have concluded that the phrase "alien seeking admission" does not describe aliens "who have resided in the United States for years." *Patel*, 2025 WL 3516865, at *5 (footnote omitted). Those aliens have already entered the country; they are "no longer seeking to enter the United States (lawfully or otherwise)." *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 71 (D.N.H. 2025).  "As thoroughly reviewed in these decisions, for Section 1225(b)(2)(A) to apply and subject a noncitizen to mandatory detention: '(1) there must be an "examining immigration officer" who determines; (2) that an "applicant for admission"; (3) is "seeking admission"; and (4) "not clearly and beyond a doubt entitled to be admitted."'" *Gonzalez Centeno*, 2026 WL 94642, at *3 (quoting *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (quoting § 1225(b)(2)(A)).[6]  The majority of courts reason

_____

[6] Sometimes, courts set forth the requirements of § 1225(b)(2)(A) as containing three, rather than four, elements. *See e.g. Vadel*, 2025 WL 3772059 at *4 ("To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond doubt entitled to be admitted." ).  There is no material difference, however, between these expositions of § 1225(b)(2)(A).  And the important point here is that however described, these courts conclude that

17

that "to adopt the government's position would violate the rule against surplusage, negate the plain meaning of the text, and render the mandatory detention of 'criminal aliens' under Section 1226(c) (as expanded last year by the Laken Riley Act) as arising from a redundant statutory provision." *Id*.

To be fair, some courts have accepted the government's position.[7]  Those courts, however, are a small minority compared the large number of courts that have rejected the government's arguments.  After considering the parties' arguments and the court cases—both majority and minority—we conclude that the

---

§ 1225(b)(2)(A) requires both that the alien be an "applicant for admission" and an alien "seeking admission."

[7] *See, e.g.*, *Lopez v. Director of Enforcement and Removal Operations,* No. 3:25-CV-1313-JEP-SJH, 2026 WL 261938 (M.D. Fla. Jan. 26, 2026); *Goyo Martinez v. Villegas,* No. 1:25-CV-256-H, 2026 WL 114418, at *1 (N.D. Tex. Jan. 15, 2026); *Cutiopala, v. Noem,* No. 1:25-CV-00211-MAL, 2026 WL 113567, at *1 (E.D. Mo. Jan. 15, 2026); *Chen v. Almodovar*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *1 (S.D.N.Y. Jan. 14, 2026); *Singh v. Noem*, No. 2:25-CV-00157-SCM, 2026 WL 74558, at *1 (E.D. Ky. Jan. 9, 2026); *Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *1 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302 (W.D. Okla. Dec. 26, 2025); *Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *1 (S.D.N.Y. Dec. 15, 2025), *appeal docketed*, No. 26-96 (2nd Cir. Jan. 15, 2026); *Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-CV-831, 2025 WL 3628229, at *1 (S.D. Ohio Dec. 15, 2025); *Candido v. Bondi*, No. 25-CV-867 (JLS), 2025 WL 3484932, at *1 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2nd Cir. Dec. 17, 2025); *Rojas v. Olson*, No. 25-CV-1437-BHL, 2025 WL 3033967, at *1 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025); *Sandoval v. Acuna*, No. 6:25-CV-01467, 2025 WL 3048926, at *1 (W.D. La. Oct. 31, 2025).

majority's construction of the statute, which is the construction that the Department of Homeland Security had for many years until recently and which avoids making the phrase "alien seeking admission" surplusage—is the better reading of § 1225(b)(2)(A).

Here, applying that construction of § 1225(b)(2)(A), the conclusion that Leon is not properly detained under that section follows. Section 1225(b)(2)(A) requires, among other things, that the alien be both an "applicant for admission" and an "alien seeking admission." 8 U.S.C. § 1225(b)(2)(A). Because Leon has never been admitted to the United States, she is deemed an "applicant for admission." *See* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission"). But Leon, whose current detention stems from her arrest in Philadelphia—not at or near the border—and who was arrested after having resided in the United States for years, is not an "alien seeking admission." Accordingly, § 1225(b)(2)(A) does not apply to her. Rather, 8 U.S.C. § 1226(a) applies, and under that provision and the regulations implementing that provision,[8]

---

[8] "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

Leon is entitled to a bond hearing.  Thus, we conclude that the respondents are violating the INA by holding her without a bond hearing.

## VI.  The Court need not reach Leon's constitutional claim or her Administrative Procedure Act claim.

In addition to her statutory claim, Leon contends that her detention without a bond hearing violates her right to due process.  "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).  Here, because we conclude that Leon is being held without a bond hearing in violation of the INA, we need not reach the constitutional issue.[9]

---

[9] In the event that the district court disagrees with the conclusion that we need not reach the constitutional issue, we note that the majority of courts often also reach the constitutional issue and conclude that in these circumstances detaining an alien who is subject to 1226(a) without a bond hearing violates due process. *See, e.g.*, *Viantsko*, 2026 WL 313473, at *5–6; *Gonzalez Centeno*, 2026 WL 94642, at *4; *Vadel*, 2025 WL 3772059, at *6; *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *5–6 (M.D. Pa. Dec. 22, 2025); *Quispe*, 2025 WL 3537279, at *7; *Patel*, 2025 WL 3516865, at *5–6; *See also Cunin v. McShane*, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (concluding in connection with a motion for a temporary restraining order that the petitioner's "constitutional challenge likely succeeds on the merits"); *Hernandez v. Rose*, No. 1:25-CV-2221, 2025 WL 3284447, at *2 (M.D. Pa. Nov. 25, 2025) (same).  The court in *Santana-Rivas* also concluded that the petitioner in that case

20

Leon also asserts a claim under the Administrative Procedure Act, 5 U.S.C. § 701 *et. seq*.  Because we recommend that Leon be granted habeas relief, we need not reach that claim.

## VII.  The Court should order that Leon be given a bond hearing before an Immigration Judge.

Having determined that the respondents are violating the INA by holding Leon without a bond hearing, we turn to the issue of the proper remedy.  As one possible remedy, Leon seeks immediate release from custody. *Doc. 1* ¶¶ 11, 80.  Some courts have granted such relief. *See, e.g.*, *Gonzalez Centeno*, 2026 WL 94642, at *4; )); *Vadel*, 2025 WL 3772059, at *7; *Patel*, 2025 WL 3516865, at *6.  But 28 U.S.C. § 1226(a) "requires only consideration on bond, and a bond hearing is therefore sufficient to correct Respondents' ongoing violation of the INA." *Cotoc Yac De Yac v. Hermosillo*, No. 2:25-CV-02593-DGE-TLF, 2026 WL 124334, at *4 (W.D. Wash. Jan. 16, 2026).  Thus, in the usual course, we think that should be the relief provided.  And Leon also requests that relief at some points in her petition. *Doc. 1* ¶¶ 11, 79.  Further, that is often the relief provided in these

was detained in violation of due process, but the due process analysis in that case was based on the fact that the detention in that case of 15 months had become unconstitutionally prolonged. *Santana-Rivas*, 2025 WL 3513152, at *3.

cases. *See, e.g., Viantsko,* 2026 WL 313473, at *6 (granting petition for writ of habeas corpus and requiring the government to provide the petitioner a bond hearing or release him from custody if such a hearing is not provided); *Cunin v. McShane*, No. 3:25-CV-1887, 2025 WL 3542999, at *3 (M.D. Pa. Dec. 10, 2025) (granting the petitioner's motion for a temporary restraining order in part and denying it in part, and ordering that the "Government must provide [the petitioner] with a bond hearing"); *A.D. v. Oddo*, No. CV 25-460J, 2026 WL 101476, at *4 (W.D. Pa. Jan. 14, 2026) (concluding that "a hearing before an immigration judge is the proper forum to determine whether bond is appropriate under that statute and the applicable regulations"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) (observing that "[m]ost courts, including this Court, confronting the issues here have determined that the appropriate relief is a bond hearing").  It is also the relief that the Third Circuit has ordered be provided in a different immigration context. *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (remanding the case to the district court for the district court to order a bond hearing within 10 days where the petitioner was subject to prolonged detention under 8 U.S.C. § 1226(c)).  Accordingly, we will recommend that the court order that Leon be provided with a bond hearing in

accordance with 8 U.S.C. § 1226(a) within 10 days, and if the respondents do not provide such a hearing within ten days, she be released.

## VIII. Other Issues.

In her petition, Leon requests that the court order that she "remain in the State of Pennsylvania and not be transferred outside the state of Pennsylvania until further order of this Court in order to preserve [her] continued access to counsel." *Doc. 1* ¶ 77 (Prayer for Relief). But apart from the request in her prayer for relief in her petition, Leon has not briefed or made any attempt to show that she is entitled to an injunction prohibiting her transfer. Thus, we will not address that issue further.

Leon also requests that the court award her fees and costs under the Equal Access to Justice Act ("EAJA"). "The EAJA authorizes an award of attorneys' fees and costs to the prevailing party 'in any civil action (other than cases sounding in tort)' brought by or against the United States if the Government's position was not 'substantially justified.'" *Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *13 (3d Cir. Feb. 2, 2026) (quoting 28 U.S.C. § 2412(d)(1)(A)). The Third Circuit recently dispelled any doubts about whether the EAJA applies to petitions for writs of habeas corpus in the immigration

23

context, holding that it does. *Id*.  But apart from a request in her petition, Leon has not briefed whether she is entitled to fees and costs under the EAJA and, if so, the amount of those fees and costs.  Thus, at this time, we will not address that issue.  Pursuant to 28 U.S.C. § 2412(d)(1)(B), an application for fees and costs under the EAJA shall be submitted within 30 days of the final judgment in the action.

## IX.  Recommendations.

Accordingly, for the foregoing reasons, we recommend that the court dismiss David O'Neill, Todd Lyons, Kristi Noem, and Pamela Bondi as respondents.  It is also recommended that the court grant in part and deny in part Leon's petition.  It is recommended that the court deny Leon's petition to the extent that the court denies Leon's request for immediate release.  It is further recommended that the court grant Leon's petition to the extent that the court orders the respondents to either provide Leon with a bond hearing pursuant to 8 U.S.C. § 1226(a) within ten days of the Court's order on this Report and Recommendation or, if they do not provide such a hearing, to release her from custody.  Finally, it is recommended that the court close this case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of February, 2026.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

25